# SUPREME JUDICIAL COURT

#### FOR THE

## COUNTY OF PLYMOUTH, OCTOBER TERM 1863, AT PLYMOUTH.

PRESENT:

HON. GEORGE T. BIGELOW, CHIEF JUSTICE.
HON. CHARLES A. DEWEY,  ⎫
HON. THERON METCALF,   ⎪
HON. PLINY MERRICK,    ⎬ JUSTICES.
HON. REUBEN A. CHAPMAN, ⎭

---

ELISHA JACOBS *vs.* EAGLE MUTUAL FIRE INSURANCE COMPANY.

If, prior to the passage of *St.* 1861, *c.* 152, a policy of insurance was issued under the conditions and limitations expressed in the by-laws of the insurance company, one of which was that when any property insured should be taken possession of by a mortgagee the policy should be void, and the application, which was expressly made a part of the policy, contained an agreement that if the answers therein did not give a full, just and true exposition of all the facts and circumstances in relation to the condition, situation, value and risk of the property to be insured the policy should be void, the omission to disclose in the application the fact that possession of the premises to be insured had been taken under a second mortgage thereof, and a subsequent retaking of possession under the same mortgage, without the consent of the underwriters, will avoid the policy.

Such policy will also be rendered invalid if, in reply to a question in the application calling for the amount of incumbrances, the answer was that there were two mortgages, for $2700 in all, the first of which was for $1150, and the second for $1550, when in fact the first was for $1150 as principal, and for accrued interest to the amount of $300 more.

CONTRACT upon a policy of insurance issued to Charles A. Whiting by the defendants upon certain tenements in Malden, dated September 20th 1856, and running until September 1st 1861. The policy contained stipulations that it was issued " under the conditions and limitations expressed in the by-laws," and reference was made to the application as forming a part of the policy. The 12th article of the by-laws provided that " when any property insured by this company shall be taken possession of by a mortgagee, or in any way be alienated, the policy shall be void ; but, on application, the policy may be revived, with the consent of the president, expressed in writing." The application, dated September 15th 1856, contained the following questions and answers : " State whether incumbered, to whom, and what amount ? " Answer. " There are two mortgages, $2700 in all. First, of $1150 ; 2d mortgage, $1550." " Are there any other circumstances material to the risk ? If so, state them." Answer. " No." The application also contained the following agreement : "And it is agreed, on the part of the applicant, that if any of the above statements are false or incorrect, or if the above answers do not give a full, just and true exposition of all the facts and circumstances in relation to the condition, situation, value and risk of the property to be insured, any policy issued thereon shall be void."

It was agreed, in the superior court, that a loss occurred in December 1860, of which due notice was given and proof made ; and that the title to the property stood as follows : A first mortgage upon the premises, dated in 1852, was assigned to the plaintiff on the 16th of September 1856, and he then entered upon and took possession of the same for breach of condition, there being at that time $1150 of the principal and about $300 as interest due thereon ; a second mortgage of the premises, to secure $1550, was made in 1853 to Jacob Sanborn, who on the 13th of August 1856 received, and on the 3d of the following September recorded, a certificate by the mortgagor of possession taken by an open and peaceable entry on the premises foi breach of condition, and on the 20th of March 1858 Sanborn again took open and peaceable possession thereof, in presence

of two witnesses, who made a certificate thereof, which was duly recorded; and a third mortgage, with power of sale, of the premises was made in 1854 to the plaintiff, who on the 7th of August 1856 took open and peaceable possession thereof in presence of two witnesses, who made a certificate thereof, which was duly recorded, and on the 15th of the following September he made a sale thereof, under the power of sale, to Charles A Whiting, subject to the two former mortgages. The plaintiff remained in the actual possession of the premises, under the first mortgage, until March 18th 1858, when he gave up possession to Sanborn under a certain agreement as to rents and foreclosure. On the 19th of April 1859, Whiting conveyed his interest in the premises to the plaintiff, and executed an assignment of the policy to him, and the plaintiff signed a paper acknowledging himself to be holden to the company for the payment of such sums as might be assessed upon the deposit note, and the company signed an assent to the assignment. Neither the president nor any other officer of the defendants ever assented to the taking of possession of the premises under either of the mortgages.

Upon these facts, judgment was rendered for the defendants; and the plaintiff appealed to this court.

*P. Simmons,* for the plaintiff.

*C. G. Davis,* for the defendants.

DEWEY, J. The assignment of this policy by Whiting to the plaintiff, and the agreement of the latter to be holden for the payment of such sums as might be assessed on the deposit note, assented to by the defendants, might have the effect to create new relations between the parties, so far as to avoid a forfeiture of the policy by reason of any subsequent acts of Whiting. But as to past acts affecting the policy, and the representations and acts of Whiting prior to the assignment, the plaintiff is liable to be affected thereby. *Foster* v. *Equitable Ins. Co.* 2 Gray, 219.

It is objected to the application for the policy that it does not disclose the fact that the person holding the second mortgage, Jacob Sanborn, had already taken possession of the premises

for condition broken, and that a certificate to that effect had been given by the mortgagor, and the same had been duly recorded.

That such a taking of possession by the mortgagee for condition broken was deemed by the defendants a material change in relation to the property, is apparent from the provisions of the 12th article of the by-laws as to the effect of such entry and taking of possession by the mortgagee after issuing the policy.

It is true that the first entry and taking of possession by Sanborn were previous to the application for this policy, so that the case stated in the by-law is not literally presented; but the fact of such taking of possession was a material one to be disclosed in relation to the title and condition of the property. It however further appears that on the 20th of March 1858 Sanborn again formally took possession of the premises for breach of condition. The precise reason for this second entry does not appear; but it seems to have been resorted to under the idea that the former entry was ineffectual, by reason of the entry and possession taken by the previous mortgagee, and the second entry, as it appears, was under some arrangement with the first mortgagee. At this time, certainly, the entry by the second mortgagee became effectual, and under article 12 rendered the policy void, and as respects the second mortgagee it was never revived.

There had also been an entry under the first mortgage, the day after the application for the policy, and this possession was continued at least until the 18th of March 1858. There was also an entry under the third mortgage. For the period of more than two years after the date of this policy, the property insured remained in the possession of the mortgagees.

Upon the sale by Whiting of his equity of redemption, on the 19th of April 1859, to the plaintiff, who had become the owner of the first mortgage, the assignment of this policy was made.

The possession thus taken by the various mortgagees — especially that taken by Sanborn — is fatal to the validity of this policy.

It is perhaps unnecessary to consider the further objection urged against the validity of this policy, namely, that of the false statement as to the amount of the incumbrances on the property. The question was directly asked of the applicant, and he was required to state whether it was incumbered, and to what amount. The answer was, "There are two mortgages, $2700 in all. First, of $1150 ; 2d mortgage, $1550." It now appears that there was in fact due upon the first mortgage, in addition to the $1150 principal, $300 accrued interest thereon; making the first mortgage an incumbrance of $1450.

We do not suppose entire precision is requisite in such a statement, or that the omission to state a small amount of accumulated interest would avoid the policy. But this was not such a case. The interest, having accumulated to the amount of $300, became in this case a substantial part of the incumbrance, and it is difficult to see why to that extent this statement as to existing incumbrances on the property was not false. It therefore subjected him to the consequences of his stipulation contained in the application, "that if any of the above statements are false or incorrect, any policy issued thereon shall be void."

*Judgment for the defendants.*